FIRST NATIONAL BANK OF FAIR HAVEN

v.

VICTORIA A. JOHNSON ET AL.

FIRST NATIONAL BANK OF FAIR HAVEN

v.

JOHN G. JOHNSON ET AL.

RUTLAND COUNTY, 1893.

Before : TYLER, MUNSON, START AND THOMPSON, JJ.

*Application of collateral in reference to surety.    When surrender of collateral discharges surety.*

1. A creditor holding collateral as security for several notes, a part of which are signed by a surety, may, as between himself and the surety, in the absence of any direction from the debtor, apply the proceeds of the collateral to what notes he pleases.

2. A creditor who voluntarily surrenders collateral discharges to that extent the surety, but it is not a voluntary surrender to pay over to the debtor the proceeds of the collateral upon the substitution of other collateral in pursuance of a contract in force when the relation of suretyship was assumed.

3. The plaintiff had entered into an arrangement by which it was to discount the paper of V. to an amount of $10,000, upon condition that V. should deposit with it an equal amount of commercial paper as collateral. As this commercial paper was paid, the plaintiff was to pay over to V.

the proceeds upon receiving other satisfactory paper in substitution. Becoming dissatisfied, the plaintiff refused to go on without additional security, and the defendant signed as surety, nothing being said about the collateral fund. At a certain point the defendant refused to sign as surety longer. When V. stopped payment the plaintiff held four notes: one for $2,000 and one for $1,500, signed by defendant, and one for $3,500 and one for $2,000, not signed by the defendant, but taken in renewal for notes which had been signed by her. Subsequently to the date of first of the two notes signed by the defendant, the plaintiff collected from the collateral notes in all $9,059.36. Of this the plaintiff had paid over to V., from time to time, upon receiving other collateral paper, $4,287.77, and had applied the balance in payment upon the two notes not signed by the defendant. *Held*, that the defendant was not discharged as surety by the act of the plaintiff in so paying over the proceeds of the collateral notes to V., and that it might make the application of the balance which it did.

Assumpsit. Heard upon the report of a referee at the September term, 1892, TAFT, J., presiding. Judgment *pro forma* for the plaintiff. The defendant excepts.

There was no question as to the liability of the principal defendant. The defendant, Victoria A. Johnson, was surety upon the notes in suit, and claimed to have been discharged in virtue of the transactions by the plaintiff in reference to certain collateral security.

The Valido Marble company was engaged in the business of manufacturing and selling marble, in the course of which it received considerable amounts of commercial paper on time. Being compelled to borrow money for use in its business, it had made an arrangement with the plaintiff by which the plaintiff was to loan it to the amount of $9,000. As security for this loan the Valido Marble company deposited with the plaintiff these notes, which it received from its customers, to the amount of $9,000. The plaintiff was to collect these notes as they fell due and to pay over to the Valido Marble company the amounts collected, upon receiving

from it other satisfactory notes of a like amount, so that the collateral fund should at all times be kept up to $9,000.

Under this arrangement the plaintiff had discounted for the Valido company four notes, one for $1,500, one for $3,500, and two for $2,000 each, payable at different dates. Becoming dissatisfied with its security it refused to renew these notes unless some additional security should be given, and for this purpose it was arranged that the defendant, Victoria A. Johnson, should sign the notes given from time to time in renewal as surety. Mrs. Johnson was informed of the collateral fund and was assured that she was amply protected thereby, but she never had any communication with the plaintiff in reference to it, nor did the plaintiff know that she relied upon it.

When the notes for $3,500, $1,500, and one of those for $2,000 respectively, fell due they were renewed by notes of like amount on four months' time, signed by Mrs. Johnson as surety. When the other $2,000 note fell due she declined to sign any further notes, and this note was renewed without her signature. When the note for $3,500 again fell due this also was renewed by a note not signed by Mrs. Johnson. Before the next fell due the company stopped payment. These suits were brought upon the notes, one for $2,000 and one for $1,500, which had been signed by Mrs. Johnson as surety, and which had not then fallen due.

Subsequently to the date at which the plaintiff had discounted the first of the notes upon which suit was brought the plaintiff had collected from the collateral notes the amount of $9,059.36. Of this it had paid over from time to time to the Valido Marble company the sum of $4,287.77; of the balance it had applied $2,021.67 to the payment of the $2,000 note which had been given in renewal of the original note for $2,000 not signed by Mrs. Johnson, and

$2,749.92 towards the payment of the $3,500 note which had been given in renewal of the note signed by her.

The referee reported that the books of the plaintiff had been kept in such a manner that it was impossible to tell what collateral notes had been paid subsequently to the date last above mentioned, or what notes had been received by the plaintiff, or what notes made up the collateral account at any particular date.

*C. A. Prouty* and *Geo. E. Lawrence* for the defendant.

If the creditor releases collateral securities or improperly conducts himself in reference to them, the surety is discharged to the extent of the value of the collateral. Rand. Com. Paper, s. 951; *Smith* v. *Day*, 23 Vt. 625; *Hurd* v. *Spencer*, 40 Vt. 581; *Baker* v. *Briggs*, 8 Pick. 121; *Keel* v. *Lang* (Ore.), 24 Pac. Rep. 253.

And this is true both of collateral which the creditor has at the time the indebtedness is contracted and that which he subsequently receives. Rand. Com. Paper, s. 952; *Guild* v. *Butler*, 127 Mass. 386; *Springer* v. *Toothaker*, 43 Me. 381.

It was incumbent upon the plaintiff to show that it paid over the proceeds of the collateral to the Valido Marble company under such circumstances that the surety was not prejudiced. In this case the referee reports that the books of the bank were so kept that it was impossible to tell what the bank received in exchange for this money. *American Bank* v. *Baker et al.*, 4 Met. 164; *Guild* v. *Butler*, 127 Mass. 386.

*J. C. Baker* and *R. C. Abell* for the plaintiff.

The bank was bound by its contract to pay over the proceeds of these collateral notes upon receiving other paper in place of those. *Adams* v. *Dutton*, 57 Vt. 515.

Mrs. Johnson had no right to direct as to the application of the proceeds of these collateral notes. *Stamford Bank* v. *Benedict*, 15 Conn. 437 ; *Sager* v. *Warley*, Rice's Eq. 26 ; *Stone* v. *Seymour*, 15 Wend. 19 ; *Hanson* v. *Rounsaville*, 74 Ill. 238.

The surety was bound to pay all the debts for which the collateral was held before becoming entitled to any part of it. *Gannett* v. *Blodgett*, 39 N. H. 150; *Morrison* v. *Bank*, 23 Am. St. Rep. 39.

The opinion of the court was delivered by

THOMPSON J.    These cases were heard together. The defendant, Victoria A. Johnson, was a surety on the notes in suit and that fact was known to the plaintiff when it discounted them for the Valido Marble company.    She contends that she has been discharged from liability on the notes by the conduct of the plaintiff in respect to collateral security which it received and held from the company to secure its indebtedness including these notes to the plaintiff.

As we construe the referee's report, he finds that two or three years previous to the execution and delivery of these notes, the company made an arrangement with the plaintiff by which the latter was to discount notes for the former to the amount of $7,000, and for security for the payment of notes thus discounted the company was to deposit with the plaintiff notes to the amount of $7,000.    By the terms of the arrangement as to this collateral security, the plaintiff was to collect the notes deposited as collateral as they fell due and pay over the money thus collected to the company, when it deposited with the plaintiff satisfactory collateral notes to take the place of those which had been collected. The company was also to replace with other notes such of the collateral notes as might not be paid by the makers at maturity, so that the amount of the collateral should at all

times be kept good.   Before Mrs. Johnson became a surety on any notes for the company, this arrangement was so modified as to provide for discounts and collateral security to the amount of $9,000, the arrangement in all other respects being the same as before.   This modified arrangement continued for a time, when the plaintiff becoming dissatisfied with the collateral notes, declined to proceed further under it in respect to discounts.   Thereupon the arrangement was so modified that the collateral account was to be increased to $10,000, and the notes which plaintiff should discount for the company were to be signed by Mrs. Johnson, but the other provisions of the previous arrangement were to continue in force.   The company deposited collateral notes with the plaintiff as required by the terms of the agreement first made and its subsequent modifications.   Under the arrangement last stated the plaintiff discounted the notes in suit and the other notes described in the referee's report. Subsequent to the time when Mrs. Johnson became surety on the notes in suit, the plaintiff received from the collection of notes held as collateral security $9,059.36, of which it applied $4,771.59 in payment of notes discounted by it for the company and secured by this collateral.   The balance of the amount collected, viz., $4,287.77, was paid over to the company from time to time, upon the plaintiff's receiving from it a like amount of satisfactory commercial paper to take its place in the collateral security.

The defendant, Mrs. Johnson, insists that the plaintiff was bound to apply this money, or so much of it as might be required for that purpose, in the payment of the notes in suit, and that the failure of the plaintiff to thus apply it discharged her as surety.

All the notes held by the plaintiff were secured by the collateral notes.   It does not appear that the debtor gave any direction in respect to the application of the money collected thereon.   The plaintiff, therefore, had the right to

make the application on any indebtedness secured by the collateral. *Hicks* v. *Blanchard*, 60 Vt. 673. Mrs. Johnson was not injured by such application, for to entitle her to receive the collateral security from the plaintiff she must first pay it the entire indebtedness secured thereby. Hence, she was not discharged by the application of that part of the money collected which was applied in payment of the notes not signed by her.

The general rule is that if a creditor receives collateral security from the principal, the surety is entitled to the benefit of it; and that a voluntary surrender of it by the creditor discharges the surety. *Austin* v. *Belknap*, 54 Vt. 495. The payment of the $4,287.77 to the company by the plaintiff, as stated by the referee, was not a voluntary surrender of the collateral security, but a keeping the same good to the full amount by substitution of the commercial paper for the money collected in strict performance by the plaintiff of the contract by which it received the collateral notes. The plaintiff had not received notice from Mrs. Johnson that she signed the notes relying upon an understanding with the company that the security held by the plaintiff should be held for the payment of the notes signed by her. In performing its agreement with the company in respect to the collateral security, the plaintiff simply observed its legal duty and violated no duty which it owed to her as surety.

*Judgment affirmed in both cases.*